UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ARTURO MANZANO, JR.,

    Plaintiff,

v.                                                   Case No:   2:17-cv-522-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Arturo Manzano, Jr.'s Complaint, filed on September 21, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED and REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work or any other

substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On September 8, 2014, Plaintiff filed an application for disability insurance benefits. (Tr. at 95, 172-73). Plaintiff asserted an onset date of June 2, 2014. (*Id.* at 10). Plaintiff's application was denied initially on December 22, 2014 and on reconsideration on March 24, 2015. (*Id.* at 95, 106). A hearing was held before Administrative Law Judge ("ALJ") Hope G. Grunberg on June 14, 2016. (*Id.* at 55-88). The ALJ issued an unfavorable decision on July 25, 2016. (*Id.* at 10-25). The ALJ found Plaintiff not to be under a disability from June 2, 2014, through the date of the decision. (*Id.* at 25).

On August 1, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on September 21, 2017. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 23).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2020. (Tr. at 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 2, 2014. (*Id.*). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "cervical and lumbar degenerative disc disease with radiculopathy, history of right hip fracture status-post open reduction internal fixation (ORIF), peroneal nerve palsy, sciatic neuropathy with axonal compromise, obesity, closed cranial trauma, and neurocognitive disorder (20 [C.F.R. §] 404.1520(c))." (*Id.* at 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id*. at 14).

At step four, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 [C.F.R. §] 404.1567(a). The claimant can occasionally balance, kneel, stoop, crouch, crawl, and climb ramps and stairs. He may not climb ladders, ropes, or scaffolds, and should avoid workplace hazards such as unprotected heights and dangerous, moving machinery. Vibration should also be avoided. He may not push, pull, or operate foot controls with the right lower extremity. The claimant is limited to understanding, remembering, and carrying out simple, routine, and

> repetitive tasks. There should be no work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by- side and the work of one affects the work of the other). Changes should be easily explained and no more than occasional.

(*Id.* at 17).

The ALJ determined that Plaintiff had no past relevant work. (*Id.* at 23). The ALJ considered Plaintiff's age, education, work experience, and RFC, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 23-24). The ALJ noted that the vocational expert identified the following representational occupations that Plaintiff would be able to perform: (1) addresser/mail sort clerk, DOT # 209.587-010, sedentary, unskilled, SVP 2; (2) assembler, toy stuffer, DOT # 731.685-014, sedentary, unskilled, SVP 2; and (3) optical final assembler, DOT # 713.687-018, sedentary, unskilled, SVP 2. (*Id.* at 24).[2] The ALJ concluded that Plaintiff was not under a disability from June 2, 2014, through the date of the decision. (*Id.* at 25).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

4

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises four issues. As stated by the parties, they are:

(1) Whether the ALJ erred in giving little weight to the opinions of treating physician Dr. Afield, Certified Work Capacity Evaluator Gerkin, and Board-Certified Vocational Expert Lucas and in failing to develop the record.

(2) Whether substantial evidence supports the ALJ's finding that the jobs identified complied with the RFC.

(3) Whether the ALJ erred in her assessment of Plaintiff's cognitive impairments and the effects of his pain.

(4) Whether the ALJ erred in failing to find Plaintiff's depression to be a severe impairment.

(Doc. 32 at 18, 32, 41, 49 ).

### A. Weight Afforded Treating Physician, Certified Work Capacity Evaluator and Vocational Expert

Plaintiff asserts that the ALJ erred in the weight he afforded the opinions of Dr. Afield (a treating physician), Dr Gerkin (a certified work capacity evaluator), and Dr. Lucas (a board-

certified vocational expert). (Doc. 32 at 18-24). The Commissioner contends that the ALJ properly considered these professional's opinion and provided good reasons for assigning little weight to their opinions. (Tr. at 25-32).

Plaintiff raises issues concerning whether the ALJ applied the correct legal standards to these providers' opinions. As a treating physician, Dr. Afield's opinion is entitled to a different legal analysis than the opinions of Dr. Gerkin and Dr. Lucas. Thus, the Court sets forth below the legal analysis for Dr. Afield's opinion separately from the legal analysis for the opinions of Dr. Gerkin and Dr. Lucas. The Court begins its analysis with Dr. Afield's opinion below.

1.   **Dr. Afield's Opinion**

Plaintiff argues that the ALJ did not properly evaluate Dr. Afield's opinion. (Doc. 32 at 19). Plaintiff claims that the ALJ afforded Dr. Afield's opinion little weight for the following reasons: (1) Dr. Afield relied on the statements of Plaintiff's girlfriend to form his opinion; (2) Dr. Afield's opinion contained conclusions reserved to the Commissioner concerning disability; (3) Plaintiff's behavior at the hearing was persuasive; (4) Plaintiff's IQ of 84 was inconsistent with Dr. Afield's opinion; and (5) a State agency physical consultative examination one month after Dr. Afield's examination showed Plaintiff's mental activities, understanding, memory, concentration, social interaction, and adaption were intact. (*Id.* at 19-20). Plaintiff argues that these reasons are not good cause to afford Dr. Afield's opinion little weight. (*Id.* at 21-23).

The Commissioner contends that the ALJ provided good reasons, supported by substantial evidence, for assigning little weight to Dr. Afield's opinion. (*Id.* at 25). The Commissioner argues that Dr. Afield's finding that Plaintiff is disabled is reserved to the Commissioner. (*Id.* at 26). Further, the Commissioner contends that Dr. Afield's opinion is

6

inconsistent with the medical records. (*Id.* at 27-28). The Commissioner also argues that Dr. Afield's opinion was based on the subjective reports of Plaintiff and his girlfriend. (*Id.* at 29).

### a. Legal Standard

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* In the instant case, Dr. Afield is a treating physician and, thus, his opinion is entitled to substantial or considerable weight unless good cause exists to the contrary. *Id.*

The ALJ cites to State agency one-time examining physician Dr. Kibria in support of affording Dr. Afield's opinion little weight. (Tr. at 21). Even though examining doctors' opinions are not entitled to deference, an ALJ is nonetheless required to consider every medical opinion. *Bennett v. Astrue*, No. 308-CV-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). "The ALJ is to consider a number of factors in determining how much weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

### b. Dr. Afield's Progress Notes

*February 24, 2015 Progress Notes*

On February 24, 2015, Walter E. Afield, M.D. conducted a ninety (90) minute Indepth Neuropsychiatric Evaluation. (Tr. at 801-804). Dr. Afield listened to Plaintiff's subjective complaints and the observations of his girlfriend/wife. (*Id.* at 801-802). Upon examination, Dr. Afield found Plaintiff spoke in a normal tone of voice, but rambled. (*Id.* at 802). Dr. Afield also found that Plaintiff spoke somewhat tangentially and had a very difficult time finding words. (*Id.*). Dr. Afield noted that occasionally Plaintiff stuttered, could not put words together, and had a clear issue "in trying to find things with words and he will confuse them." (*Id.* at 803). Dr. Afield also noted that Plaintiff could not remember more than two numbers forward and could not understand the concept of doing two numbers backwards. (*Id.*). In addition, Dr. Afield

8

asked Plaintiff who was president and Plaintiff responded that he thought it was Bill Clinton. (*Id.*). Further, Dr. Afield found that Plaintiff repeated himself constantly. (*Id.*).

Dr. Afield diagnosed Plaintiff with: (1) Neurocognitive disorder, severe due to traumatic brain injury; (2) Chronic pain due to bulging discs; (3) Broken hip; (4) Sciatic nerve loss and damage; (5) Major depression with anxiety, suicidal ideation but not active; (6) Labyrinthine dysfunction due to the traumatic brain injury; and (7) Neurogenic stammering due to the traumatic brain injury. (*Id.*). Dr. Afield found Plaintiff's issues to be "a work in progress and need to be looked at further." (*Id.*). Dr. Afield also found that Plaintiff had a number of physical injuries and that his brain injury is "bad and these things are dynamic. They are not static and deteriorate often into seizures and Alzheimer's/Parkinson-like symptomology." (*Id.*). Dr. Afield found Plaintiff totally disabled at this point and "with marked restriction in activities." (*Id.*). Dr. Afield also noted that the examination lasted ninety (90) minutes due to the complexity of Plaintiff's problems and Plaintiff's emotional condition. (*Id.* at 803-804). Dr. Afield prescribed medication for Plaintiff. (*Id.* at 804).

*April 7, 2015 Progress Notes*

After a review of Plaintiff's medical history on March 10, 2015, Plaintiff presented to Dr. Afield on April 7, 2015. (*Id.* at 797-99). Dr. Afield commented that he "was having horrendous problems getting Mr. Manzano to finish any of the testing." (*Id.* at 797). Dr. Afield noted that Plaintiff had an IQ of 84, but was unable to pay attention to numbers. (*Id.*). Further, Dr. Afield found that Plaintiff's cognitive impairments were "horrible," and he had a "severe neurocognitive impairment." (*Id.*). Dr. Afield noted that Plaintiff's testing was normal and that Plaintiff was reading at the 11th grade level, spelling at the 7th grade level, and doing math at the 7th grade level, which was unusually high. (*Id.*). Yet, Dr. Afield also found that Plaintiff did not

9

know where he was most of the time, was in pain all of the time, and could not do anything except wander and take "semi care of the family." (*Id.*). Dr. Afield reiterated that "[t]his man is totally, absolutely 100% disabled, and he will never return to substantial, gainful employment." (*Id.*). Dr. Afield prescribed different medication that might help Plaintiff focus because Plaintiff was unable to afford the earlier prescription. (*Id.*).

*April 22, 2015 Progress Notes*

Plaintiff returned to Dr. Afield on April 22, 2015. (*Id.* at 796). Dr Afield found Plaintiff to be "exceptionally difficult." (*Id.* at 796). Dr. Afield noted that Plaintiff did not want to take his medication then he did want to take his medication. (*Id.*). Dr. Afield noted again that he was having "horrendous problems" having Plaintiff complete the testing. (*Id*). Dr Afield also observed that Plaintiff does not clean, shop, or "do anything" except sit around and "ramble[]." (*Id.*).

          **c.**         **Analysis**

A treating physician's opinion – such as Dr. Afield's opinion – is entitled to substantial weight unless good cause is shown to the contrary. *Phillips*, 357 F.3d. at 1240. Here, the ALJ summarized Dr. Afield's notes from Plaintiff's visits. (*Id.* at 19, 20). The ALJ then listed seven (7) reasons why she gave little weight to Dr. Afield's opinion. (Tr. at 21). The Court determines that these reasons do not constitute good cause to assign little weight to Dr. Afield's opinion. The Court considers each reason below.

First, the ALJ noted that Dr. Afield opined on multiple occasions in 2015 that Plaintiff is totally disabled with marked restrictions in activities and will never return to substantial gainful employment. (*Id.*). The ALJ found that the determination of disability is reserved to the Commissioner. (*Id.*). The ALJ correctly noted that the opinion Plaintiff is totally disabled and

10

unable to work is reserved to the Commissioner. *See Lanier v. Comm'r of Soc. Sec.*, 252 F. App'x 311, 314 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(e)). Thus, this reason weighs in favor of the ALJ not adopting Dr. Afield's opinion that Plaintiff is disabled and instead making that determination independently. It does not, however, warrant affording Dr. Afield's entire opinion little weight.

Second, the ALJ found that Dr. Afield's opinion is based upon the subjective reports of Plaintiff and his girlfriend. (*Id.*). The ALJ recognized that Dr. Afield observed Plaintiff stuttering, and also observed that Plaintiff could not remember more than two numbers forward, did not understand the concept of counting backwards, did not know the current president, and repeated himself constantly. (*Id.*). Yet, the ALJ found that the remainder of the examination was based upon subjective reporting by Plaintiff and his girlfriend. (*Id.*). Although Dr. Afield took into consideration Plaintiff's and Plaintiff's girlfriend's subjective statements, he also based much of his reports on his observations of Plaintiff's behavior and speech. (Tr. at 801-804). For example, Dr. Afield noted Plaintiff rambled, spoke somewhat tangentially, had difficulty finding words, and stuttered. (*Id.*). Dr. Afield conducted some testing on Plaintiff, which showed problems with numbers and current events. (*Id.*). Further, Dr. Afield mentioned that he "was having horrendous problems getting" Plaintiff to complete testing. (*Id.* at 796, 797). Thus, the Court finds that Dr. Afield did not base his reports solely or substantially on the subjective reports of Plaintiff and his girlfriend, but rather on the testing he conducted and on his own observations.

Third, the ALJ found Plaintiff's presentation at the hearing persuasive. (Tr. at 21). The ALJ observed that Plaintiff did not appear to have difficulty speaking or recalling information and testified in an unremarkable manner for approximately thirty (30) minutes. (*Id.*). In

11

addition, the ALJ noted that Plaintiff did not repeat himself constantly as reported by Dr. Afield. (*Id.*). An ALJ is permitted to note the demeanor of a claimant during a hearing as one of many factors that would call into question a claimant's credibility. *Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 745 (11th Cir. 2018). An ALJ is not, however, permitted to impose her observations in lieu of a consideration of the medical evidence presented. *Id.* In this case, the ALJ discounted Dr. Afield's opinion based, at least in part, on the ALJ's observations of Plaintiff at the hearing. The Court finds that the ALJ's observations at the hearing do not preclude Dr. Afield's opinion from being supported by the evidence or lead to the conclusion that Dr. Afield's opinions are contradicted by the evidence. Thus, the Court finds that the ALJ's observations do not constitute sufficient cause to discount a treating physician's opinion.

Fourth, the ALJ determined that Plaintiff's activities are not "markedly" restricted as found by Dr. Afield. (Tr. at 21). The ALJ does not cite to any medical records to support this reason, but instead notes that the Plaintiff is the primary caregiver for two young children, drives, prepares simple meals, and is able to do housework with some breaks. (*Id.*). The ALJ observed Plaintiff for a total of thirty (30) minutes and relied upon Plaintiff's subjective testimony to reach this determination. (*Id.*). Dr. Afield, on the other hand, reached his opinion that Plaintiff had markedly restricted activities after examinations, testing and observations of Plaintiff, initially for ninety (90) minutes and in subsequent examinations. (*Id.* at 21, 796-804). Thus, the Court finds that this reason is not good cause to discount Dr. Afield's opinion.

Fifth, the ALJ found notable that Plaintiff is not receiving any treatment for his neurocognitive disorder, including no medication management or therapy. (*Id.*). However, Dr. Afield prescribed medication for Plaintiff to attempt to help his condition. (Tr. at 797, 804). Thus, the Court finds that this reason is not good cause to discount Dr. Afield's opinion.

Sixth, and arguably most compelling, is that the ALJ cited to a medical report that found Plaintiff's mental activities, understanding, memory, concentration, social interaction, and adaption were intact. (*Id.* at 21). Although the ALJ does not name the medical provider, the ALJ refers to and relies upon the one-time consultative independent medical examination by Ehsan M. Kibria, D.O. completed on March 3, 2015. (*Id.* at 448-52). During the medical examination, Dr. Kibria found the following:

> Work related mental activities, understanding, memory, concentration, social interaction and adaptation are intact. Patient is right handed. Oriented to time, place and person. Historical events were related in a coherent organized manner. There was a normal fund of general information and normal speech pattern.

(*Id.* at 449). Keeping in mind that Dr. Kibria was tasked with completing an independent medical (not mental) examination, the ALJ summarized that portion of Dr. Kibria's report accurately. (*Id.* at 21). However, Dr. Kibria's impressions and diagnosis included Plaintiff's physical problems as well as finding that Plaintiff has short-term memory problems. (*Id.*). The ALJ failed to mention Dr. Kibria's finding concerning short-term memory problems when she discounted Dr. Afield's opinion. (*Id.*). Further, Dr. Kibria apparently did not conduct any type of testing as to Plaintiff's mental limitations. (*Id.* at 448-49). Also, as a one-time consultant, Dr. Kibria's opinion is not entitled to deference; whereas, Dr. Afield's opinion is entitled to substantial or considerable weight as a treating physician. *Phillips*, 357 F.3d at 1240. Moreover, in affording Dr. Afield's opinion little weight, the ALJ does not cite to any other medical records or opinions that either are inconsistent with or contradict Dr. Afield's opinion as to Plaintiff's mental limitations. (Tr. at 21). Thus, the Court finds that the ALJ did not establish good cause to discount Dr. Afield's opinion when the ALJ relied heavily on Dr. Kibria's opinion as a one-time medical consultant.

Seventh, the ALJ found Dr. Afield's opinion inconsistent with Plaintiff's IQ score of 84. (*Id.*). In his Progress Notes, Dr. Afield noted Plaintiff's IQ score of 84, but found Plaintiff was unable to pay attention to numbers. (*Id.* at 797). Dr. Afield acknowledged that Plaintiff's reading, spelling, and math were at an unusually high level, but contrasted that with Plaintiff's inability to know where he is most of the time. (*Id.*). Clearly, Dr. Afield was aware of Plaintiff's IQ score, but did not find that this IQ score precluded opining that Plaintiff has mental limitations. (*Id.*).

Even though the ALJ listed a number of reasons why she discounted Dr. Afield's opinion, the Court does not find that these reasons alone or in combination establish good cause to give little weight to Dr. Afield's opinion. To establish good cause, an ALJ must find that Dr. Afield's opinion is not bolstered by the evidence or the evidence supports a contrary finding. *Phillips*, 357 F.3d at 1240.[3] As explained above, the ALJ failed to show that the evidence did not bolster Dr. Afield's opinion or that the evidence supported a contrary finding. Accordingly, the Court finds that the ALJ's decision is not supported by substantial evidence.

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining issues focus on whether the ALJ properly weighed other medical provider's opinions, whether the jobs identified complied with Plaintiff's RFC, whether the ALJ erred in assessing Plaintiff's cognitive impairments and the effects of his pain, and whether the ALJ erred in finding Plaintiff's depression to be a severe impairment. (Doc. 32 at 18, 32, 41, 49). Because the Court finds that on remand, the Commissioner must reevaluate Dr. Afield's

---

[3] The third basis for good cause to discount a treating physician's opinion is that it is conclusory or inconsistent with his own medical records. *Phillips*, 357 F.3d at 1240. The ALJ did not make such a finding, however. Accordingly, the Court need not address it here.

14

opinion in light of all of the evidence of record, the disposition of these remaining issues would, at this time, be premature.

## III. Conclusion

Upon consideration of the submission of the parties and the administrative record, the Court finds that the decision of the Commissioner is not supported by substantial evidence.

**IT IS HEREBY ORDERED:**

(1) The decision of the Commissioner is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner to reconsider: (1) the opinions of Dr. Afield, Dr. Gerkin, and Dr. Lucas; (2) the jobs identified; (3) Plaintiff's cognitive impairments and the effects of his pain; and (4) Plaintiff's depression.

(2) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

(3) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE AND ORDERED** in Fort Myers, Florida on November 29, 2018.

MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties